UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 22-cv-22540-JEM/Becerra

NAVAL LOGISTIC, INC. d/b/a
MIDDLE POINT MARINA,

        Plaintiff,
v.

M/B VAMONOS, a 55' Andy
Mortensen, *in rem*,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** came before the Court on Plaintiff, Naval Logistic, Inc. d/b/a Middle Point Marina's, Amended Motion for Entry of Final Default Judgment *in rem* and for Sale of the Vessel (the "Motion").[1] ECF No. [22]. No response to the Motion has been filed, and the time to do so has passed. Upon due consideration of the Motion, the pertinent portions of the record, and the applicable law, it is hereby **RECOMMENDED** that the Motion be **GRANTED IN PART AND DENIED IN PART**.

**I.    BACKGROUND**

In February 2022, Plaintiff entered into a Shipyard Agreement with JSO Marine, Inc., the owner of Defendant Vessel, for the provision of storage and to estimate the cost of repairing and refitting the Vessel. ECF No. [1] at ¶ 10, pp. 9-13. JSO Marine failed to approve the estimates that Plaintiff provided and failed to remove the Vessel from Middle Point Marina, thereby resulting in storage costs which remain outstanding. *Id*. at ¶¶ 11-15. The Agreement provides that Plaintiff

---

[1] This Matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [23].

1

"has a Maritime Lien on the Vessel for storage, dockage, equipment, materials, labor, dockage, and any other necessaries provided to the Vessel." *Id*. at 11-12.

On August 10, 2022, Plaintiff filed a Verified Complaint against the Vessel *in rem*. ECF No. [1]. Plaintiff raises claims for breach of maritime contract (Count I), foreclosure of a maritime lien for necessaries (Count II), and unjust enrichment (Count III). *Id*. at 3-6. Thereafter, pursuant to the Court's Order, the Clerk issued a Warrant of Arrest against the Vessel. ECF Nos. [8], [9]. On August 29, 2022, the U.S. Marshal Service arrested the Vessel, and it was placed in the care of Middle Point Marina, as substitute custodian. ECF Nos. [10], [11].

That same day, as well as the following day, Plaintiff notified JSO Marine and its counsel of the Vessel's arrest via telephone and email. ECF No. [22] at 3-4. JSO Marine indicated that it would not be defending the claims against the Vessel. *Id*. at 4. In early September 2022, Plaintiff notified Willis Custom Yachts, the last owner of record of the Vessel, that this *in rem* action had been instituted, and Willis indicated that it had sold the Vessel to JSO Marine and had no further interest in it. *Id*. Plaintiff also emailed Willis a copy of the Verified Complaint and the Return of Service for the arrest of the Vessel. *Id*.

On September 16, 2022, Plaintiff published a Notice of Action In Rem and Arrest of Vessel in the Miami Daily Business Review in accordance with Local Admiralty Rule C(4) and A(7). ECF No. [14-1]. No party filed a claim of ownership in this action, or otherwise entered an appearance. On November 18, 2022, the Clerk entered a default against Defendant Vessel for "failure to appear, answer, or otherwise plead to the complaint filed herein within the time required by law." ECF No. [17]. Subsequently, pursuant to Local Admiralty Rule C(8), Plaintiff served JSO Marine and Willis with a copy of the Verified Complaint, Return of Service, and correspondence advising them that a default has been entered against the Vessel and that Plaintiff was going to seek a default judgment so that the Vessel could be sold to satisfy Plaintiff's maritime

liens. *See* ECF No. [22-1]. To date, neither JSO Marine nor Willis has appeared in this action or sought to contest entry of default judgment.

## II. INSTANT MOTION

On April 11, 2023, Plaintiff filed its Motion seeking pre-arrest storage fees of $40,312.25, which is based upon storage fees of $2.50 per foot per day plus 7% Florida sales tax for a total daily rate of $147.13 for the first thirty days that the Vessel was stored (March 30, 2022 through April 29, 2022), and thereafter at the rate of $5.00 per day plus 7% Florida sales tax for a total daily rate of $294.25 until the Vessel's arrest on August 29, 2022. ECF Nos. [22] at 8-9; [22-2] at ¶ 7(a); [25-1] at ¶ 7(a). Plaintiff further seeks pre-judgment interest at the rate of 8.5% per annum on the pre-arrest storage fees, which totals $4,831.42, and *custodia legis* fees from the Vessel's arrest through the present at a rate of $187.50 per day, which total $96,562.50. ECF Nos. [22] at 9; [22-2] at ¶ 7(b); [25-1] at 1, 2, 6. Plaintiff also requests recovery of its costs incurred enforcing its maritime lien, which are comprised of $402.00 for the Clerk's filing fee, $5,500.00 for the Marshal's bond, and $52.66 for publication costs. ECF Nos. [22] at 9-10; [22-2] at ¶ 7(c); [25-1] at 6. In addition, Plaintiff asks the Court to direct that the Vessel be sold at a U.S. Marshal sale, free and clear of all liens and encumbrances, and that Plaintiff be allowed to credit bid its judgment at the Marshal sale, with the sale proceeds to be paid to Plaintiff to satisfy its judgment. ECF No. [22] at 10.

## III. ANALYSIS

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. First, subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend." Fed. R. Civ. P. 55(a). Next, upon the entry of a clerk's default, the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a

sum that can be made certain by computation, . . . on the plaintiff's request, with an affidavit showing the amount due . . . ." *Id.* at 55(b)(1).

A default admits plaintiff's well-pled allegations of fact. *Lary v. Trinity Physician Fin. & Ins. Services*, 780 F.3d 1101, 1106 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Thus, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought." *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard).

### A. Plaintiff Is Entitled To Default Judgment On Its Claim For Foreclosure Of A Maritime Lien For Necessaries.

The Federal Maritime Lien Act, 46 U.S.C. §§ 31341-31343, provides that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner ... has a maritime lien on the vessel." *Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 465 F.3d 1267, 1276 (11th Cir. 2006) (*citing* 46 U.S.C. § 31342). "[F]ederal courts have consistently held that a maritime lien arises when the necessary is provided to the vessel." *Id*. at 1276. "[A] maritime lien converts the vessel itself into the obligor and allows injured parties to proceed against it directly." *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) (citation omitted).

In order to establish a maritime lien on a vessel, a party must satisfy a three-prong test based on the plain meaning of the Federal Maritime Lien Act. *See Barcliff, LLC v. M/V Deep Blue, IMO No. 9215359*, 876 F.3d 1063, 1068 (11th Cir. 2017) (citing *Galehead, Inc. v. M/V*

4

*Anglia*, 183 F.3d 1242, 1244 (11th Cir. 1999)). In particular, "to obtain a maritime lien, a person must: (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent." *Id.* at 1068 (quoting *Galehead, Inc.*, 183 F.3d at 1244). The Eleventh Circuit later added a fourth prong to the test: that the necessaries be provided "at a reasonable price." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005); *see also Barcliff, LLC*, 876 F.3d at 1075 n.5. Plaintiff has satisfied all four elements to establish a maritime lien.

Specifically, Plaintiff alleges that it provided "necessaries" to the Vessel, "including storage and use of its dry dock," which were provided "at the direction of the Vessel's owner." ECF No. [1] at ¶¶ 24, 26. Further, the Agreement states that Plaintiff will provide "storage" services and "has a Maritime Lien on the Vessel for storage, dockage . . . and any other necessaries provided to the Vessel." ECF No. [1] at 9, 12. The definition of necessaries, as used in the Federal Maritime Lien Act, explicitly includes "the use of a dry dock or marine railway," and courts in the Eleventh Circuit recognize storage as a necessary in the context of maritime liens. *See e.g.*, *Robbie's of Key W. v. M/V Komedy III*, 470 F. Supp. 3d 1264, 1268 (S.D. Fla. 2020) ("First, Plaintiff provided necessaries to the Defendant Vessel in the form of storage and amenities.").

Plaintiff also established that the necessary of storage was provided to a "vessel" as defined in the Federal Maritime Lien Act. As used in Title 46 of the United States Code, a "vessel" is defined as follows: "[t]he word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3; *see* 46 U.S.C. § 115 ("In this title, the term 'vessel' has the meaning given that term in section 3 of title 1."). Plaintiff alleges that the Defendant Vessel "is a 55' Andy Mortensen motor vessel." ECF No. [1] at ¶ 6. Plaintiff's description is sufficient to categorize the Defendant Vessel as a "vessel" for the purposes of the maritime lien test.

5

Further, Plaintiff established that the necessary of storage was provided at a reasonable price. Plaintiff alleges that it informed JSO Marine "that if the estimate was not promptly approved, required deposit paid, and MPM instructed to begin work, the Vessel would need to be immediately removed from MPM or be subject to storage charges at the short-term rate of $2.50 per foot per day for the first 30 days, increasing to its long-term rate of $5 per foot per day thereafter, plus 7% sales tax and 5% environmental fees." ECF No. [1] at ¶ 12. Despite such notice, JSO Marine did not remove the Vessel from Middle Point Marina, thereby implicitly agreeing to those charges. *Id*. at ¶ 13. The undersigned find that this is sufficient to establish that the necessaries were provided at a reasonable price. *See Robbie's of Key W. v. M/V Komedy III*, 470 F. Supp. 3d at 1268–69 ("[T]he necessaries appear to be a reasonable price as the representative of the Defendant Vessel agreed to the storage price in the contract."). For the foregoing reasons, Plaintiff has met all elements to establish a maritime lien on the Defendant Vessel and is therefore entitled to a default judgment as to liability on Count II of the Verified Complaint.

### B. Plaintiff Has Not Established That It Is Entitled To Default Judgment For Breach Of The Agreement Or Unjust Enrichment.

Plaintiff also seeks a default judgment as to liability on its claims for breach of a maritime contract (Count I) and unjust enrichment (Count III). ECF No. [22] at 3-4, 6. To prevail on a claim for breach of a maritime repair contract, a plaintiff must establish: "(1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of the purported damages." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005). Plaintiff alleges that it entered into the Shipyard Agreement with JSO Marine for the provision of storage and to estimate the cost of repairing and refitting the Vessel. ECF No. [1] at ¶¶ 9-10. The Agreement provides that payment is due to Plaintiff upon presentation of invoices and that the

6

Vessel must be removed within 24 hours of notice or would incur storage costs. ECF No. [1] at 9-12. Plaintiff alleges that the Vessel became subject to storage fees when JSO Marine failed to move forward with the estimate that Plaintiff provided and failed to remove the Vessel from Middle Point Marina upon request. ECF No. [1] at ¶ 18. Plaintiff further alleges that JSO Marine failed to pay for storage services that Plaintiff provided to the Vessel, thereby breaching the Agreement. ECF No. [1] at ¶ 19.

However, Count I is not asserted against JSO Marine. Plaintiff summarily asserts in its Motion that "[t]he Vessel is liable for this breach." ECF No. [22] at 5. Plaintiff does not explain why this is so or provide legal authority to support the conclusion that a claim for breach of a maritime contract can be asserted against only the Vessel, absent its owner. The sole citation that Plaintiff provides, *Detroit Trust Co. v. Barlum S.S. Co.*, is distinguishable because it involved a claim under the Ship Mortgage Act of 1920 and addressed a different issue, namely whether admiralty jurisdiction existed. *See Detroit Trust Co.*, 293 U.S. 21 (1934). The undersigned notes that in Count I of the Verified Complaint, Plaintiff refers to *Crimson Yachts* for the proposition that "a maritime lien converts the vessel itself into the obligor and allows injured parties to proceed against it directly." ECF No. [1] at ¶ 21; *Crimson Yachts*, 603 F.3d at 868. This citation is inapposite and fails to demonstrate that Count I is legally cognizable because *Crimson Yachts* involved a claim to foreclose a maritime lien, not breach of a maritime contract. *Id*.

The same is true with respect to Count III for unjust enrichment. "The elements of a claim for unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Hercules, Inc. v. Pages,* 814 F. Supp. 79, 80 (11th Cir. 1993). Again, Plaintiff asserts this claim directly against the Vessel. Yet Plaintiff cites no legal authority where

7

the vessel itself was held liable for unjust enrichment. *See* ECF No. [22] at 6. Indeed, the Motion is devoid of any case law establishing the propriety of this claim, aside from a general citation to the elements of unjust enrichment. *Id.*

For these reasons, the undersigned recommends that the Court decline to enter a default judgment as to liability on Counts I and III of the Verified Complaint.

### C. Plaintiff Is Entitled To The Damages Requested.

Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)) (quotations omitted). Rule 55 does not require an evidentiary hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 Fed. Appx. 737, 746–47 (11th Cir. 2017) ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages") (quotations omitted); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

Plaintiff seeks $40,312.25 in pre-arrest storage fees, along with prejudgment interest of $4,831.42, as well as *custodia legis* fees of $96,562.50 and costs of $5,954.66. ECF Nos. [22] at 9-10; [22-2] at ¶ 7; [25-1] at 1, 2, 6. Plaintiff filed the Declaration of Robert Kessel, its general manager, who explained how the pre-arrest storage fees for the Vessel were calculated. Specifically, Mr. Kessel averred that the storage charges consist of $2.50 per foot per day plus 7% Florida sales tax for a daily rate of $147.13 for the first thirty days that the Vessel was stored. ECF Nos. [22-2] at ¶ 7(a); [25-1] at ¶ 7(a). Mr. Kessel further averred that following the initial thirty-

8

day period, the storage charges increased to $5.00 per foot per day plus 7% Florida sales tax for a total daily rate of $294.25. ECF Nos. [22-2] at ¶ 7(a); [25-1] at ¶ 7(a). According to Mr. Kessel, unpaid storage fees accrued from March 30, 2022 through the date of the Vessel's arrest on August 29, 2022, which total $40,312.25. ECF Nos. [22-2] at ¶ 7(a); [25-1] at ¶ 7(a).

These damages are recoverable. Storage of the Vessel is a necessary service that is part of the maritime lien, as is sales tax. *See Bradford Marine, Inc. v. M/C Sea Falcon*, 64 F.3d 585, 588–89 (11th Cir. 1995); *A/S Dan-Bunkering Ltd. v. M/V Zamet*, 945 F. Supp. 1576, 1580–81 (S.D. Ga. 1996) ("[T]axes due on fuel supplied to a vessel would constitute a portion of the cost of that fuel and thus be included [in the] maritime liens for necessaries."). Further, the general rule in admiralty law is that prejudgment interest should be awarded unless there is an exceptional circumstance dictating otherwise. *See City of Milwaukee v. Cement Div., Nat Gypsum Co.*, 515 U.S. 189, 193–194, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). No exceptional circumstances have been identified here.

Plaintiff Middle Point Marina is also the court-appointed substitute custodian of the Vessel. ECF No. [10]. Mr. Kessel stated that the daily rate for *custodia legis* charges is $187.50, which has accrued since the Vessel's arrest on August 29, 2022 through the present. *Id*. at ¶ 7(b); ECF No. [32] at ¶ 8. Those *custodia legis* now total $96,562.50. ECF No. [25-1] at 6. It is well settled that the expenses incurred in operating and caring for a vessel while in the custody of the court are considered "expense of justice" subject to reimbursement. *See Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1561–1562 (11th Cir. 1987) (citation omitted).

Based upon the foregoing, the undersigned finds that Plaintiff has made a sufficient showing that it suffered damages of $45,143.67 in unpaid pre-arrest storage fees, including pre-judgment interest, and $96,562.50 in *custodia legis* fees. ECF No. [25-1] at 1, 2, 6.

With respect to taxable costs, pursuant to Federal Rule of Civil Procedure 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court or statute. *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991) (citing FED. R. CIV. P. 54(d)(1)). Although Rule 54(d)(1) does not define the term "prevailing party," courts have generally interpreted it to require a change in the parties' legal relationship, through some type of court action. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001) (noting that two bases for attorney's fees, "enforceable judgments on the merits and court-ordered consent decrees[,] create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.") (citations and quotations omitted), *superseded by statute on other grounds,* Open Government Act of 2007, Pub.L. No. 110–175, 121 Stat. 2524. Should the District Court adopt the undersigned's recommendation that default judgment be entered in favor of Plaintiff, a change in the legal relationship between Plaintiff and Defendant Vessel would occur. As such, Plaintiff is considered a prevailing party for purposes of Rule 54.

Title 28, United States Code, Section 1920 "defines the term costs as used in Rule 54(d) and enumerates expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 437 (1987) (quotations omitted). The specific costs which may be awarded are as follows:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Mr. Kessler avers that Plaintiff incurred costs of $402.00 for the Clerk's filing fee and $5,500.00 for the Marshal's bond. ECF Nos. [22-2] at ¶ 7(c); [25-1] at 6. Plaintiff also seeks $52.66 for the cost of publication. *Id.* The filing fee "clearly falls within the scope of Section 1920(1)," and as such should be awarded to Plaintiff. *Grubbs v. A-1 Gutters and More, LLC*, No. 17-cv-14304, 2018 WL 4410914, at *2 (S.D. Fla. June 29, 2018); *see also Pelc v. Nowak*, 596 F. App'x 768, 771 (11th Cir. 2015) (affirming District Court's award of filing fees under Section 1920). The remaining costs are similarly recoverable. Section 1921 provides that "a court may tax as costs, [Marshal's] fees for . . . [t]he preparation of any notice of sale, proclamation in admiralty, or other public notice or bill of sale . . . [and] [t]he keeping of attached property (including boats, vessels, or other property attached or libeled . . . ." 28 U.S.C. § 1921(a)(1)(D), (E); *see also Sykes v. M/V Osprey*, No. 08-80407-CIV, 2009 WL 3446734, at *2-5 (S.D. Fla. Oct. 20, 2009) (finding that Marshal's fees and publication expenses may be taxed as costs). Accordingly, the undersigned concludes that Plaintiff is entitled to recover costs totaling $5,954.66.

**D. Plaintiff's Request for Sale of the Vessel.**

Finally, Plaintiff requests that the Court enter an order directing that the Vessel "be sold at Marshal's auction as soon as possible" and that Plaintiff be "permitted to credit bid the amount of its judgment, including pre-judgment interest, costs and *custodia legis* fees." ECF No. [22] at 10. The Supplemental Admiralty Rules apply "to actions in personam with process of maritime attachment and garnishment, actions in rem, and petitory, possessory, and partition actions, supplementing Rules B, C, and D." FED. R. CIV. P. SUPP. ADMIRALTY RULE E(1). As to the Defendant Vessel, the instant action is *in rem* and concerns enforcement of a maritime lien, thus falling within the scope of the Supplemental Admiralty Rules.

11

Supplemental Admiralty Rule E(9) permits the Court to order that the subject property be sold by the U.S. Marshal, and that the proceeds be "disposed of according to law." *Id.* at E(9). Courts in this Circuit routinely permit U.S. Marshal sales of Defendant Vessels in like circumstances and permit the party enforcing a maritime lien to credit bit its judgment at the sale. *See 5th St. Terminal, Inc. v. M/V Marathon*, No. 17-cv-24239, 2018 WL 3672273, at *3 (S.D. Fla. May 2, 2018) (recommending grant of final default judgment for plaintiff lienholder and directing the U.S. Marshal to sell the defendant vessel at public auction and permitting plaintiff lienholder to credit bid its final judgment), *report and recommendation adopted,* No. 17-cv-24239, 2018 WL 3672250, at *2 (S.D. Fla. June 27, 2018); *Shoreline Marine Fuel Delivery, Inc. v. M/V "Lisanne"*, No. 13-cv-21301, 2013 WL 12383490, at *3 (S.D. Fla. Sept. 16, 2013) (same), *report and recommendation adopted,* Paperless Order Adopting Report and Recommendation, No. 13-cv-21301 (S.D. Fla. Oct. 4, 2013), ECF No. [32]; *Lesser Fin. Enters., LLC v. S/V La Sonata*, No. 22-cv-335-JLB-KCD, 2022 WL 17416499, at *3 (M.D. Fla. Oct. 14, 2022) (recommending grant of final default judgment for plaintiff lienholder and directing sale of defendant vessel "at public action in accordance with Supplemental Admiralty Rule E(9)," and permitting plaintiff lienholder to "bid all or part of its default judgment *in rem*," at the sale), *report and recommendation adopted*, No. 22-cv-335-JLB-KCD, 2022 WL 18763603, at *1–2 (M.D. Fla. Nov. 28, 2022). As such, the undersigned finds that the request for sale of the Defendant Vessel and the request to credit bid Plaintiff's judgment at the sale should be **GRANTED**.

IV. **CONCLUSION**

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion, ECF No. [22], be **GRANTED IN PART AND DENIED IN PART**, and the District Court should issue an Order that:

1. Final default judgment be entered in favor of Plaintiff and against the Defendant Vessel on Count II of the Verified Complaint for foreclosure of a maritime lien;

2. Plaintiff be awarded a total of **$147,660.83** against the Defendant Vessel, comprised of: $40,312.25 in pre-arrest storage fees, along with prejudgment interest of $4,831.42, as well as *custodia legis* fees of $96,562.50 and costs of $5,954.66;

3. The U.S. Marshal be directed to sell the Defendant Vessel, a 55' Andy Mortensen motor vessel, including her engines, tackle, boats, and appurtenances, at public auction—free and clear of all liens and encumbrances—at the first available time and date in accordance with Supplemental Rule E of the Supplemental Admiralty Rules;

4. Plaintiff be permitted to credit bid its judgment of **$147,660.83** at the sale of the Defendant Vessel and not be required to pay any cash or other payment unless and until its successful bid exceeds the total of its judgment against the Vessel; and

5. Incorporates the language set forth in paragraphs (4) through (9) of Plaintiff's proposed Order filed at ECF No. [25-1].

### V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FIVE (5) DAYS** of being served with a copy of this Report and Recommendation. The undersigned has shortened the objection period because the Defendant has not made any appearance in this lawsuit. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on February 7, 2024.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**

14